UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN S. NARON, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-2550 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| *Defendant.* | § | |

## OPINION ON SUMMARY JUDGMENT

This social security case is before the court on plaintiff John Naron's motion for summary judgment.  (Dkt. 13.)  For the following reasons, the court denies Naron's motion and affirms the Administrative Law Judge's (ALJ's) decision.

## Background

Naron is an unemployed forty-two year old man who lives with his parents. He is morbidly obese and suffers from diabetes, hypertension, and tinea pedis lesions on both of his feet.  He has also had three surgeries on his right knee and been diagnosed with mixed personality disorder.

In 2004, Naron filed an application for Social Security disability benefits alleging that he became disabled on June 4, 2002.  The Administration initially denied his application but eventually granted him a hearing before an ALJ.

On April 28, 2006, the ALJ issued a decision denying Naron's application. The Appeals Council thereafter denied Naron's request for review, making the

ALJ's decision the final decision of the Commissioner of Social Security in Naron's case.  Naron then filed this appeal.

### Standard of Review

Federal courts review final decisions of the Social Security Commissioner under the "substantial evidence" standard.  Under this deferential standard, the court reviews the Commissioner's decision to determine only if (1) the Commissioner applied the correct legal rules and (2) the Commissioner's decision was supported by substantial evidence.  *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion."  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)).  It must be "more than a mere scintilla" but can be "less than a preponderance."  *See Masterson*, 309 F.3d at 272.  Consequently, the substantial evidence standard sometimes requires a federal court to uphold the Commissioner's decision even when it believes that most of the evidence weighs against it.  *See id.*

### Disability Evaluation

The Commissioner employs a five-step inquiry to determine whether a claimant is disabled and thus entitled to disability benefits:

1.     Is the claimant engaged in substantial gainful activity, i.e. working?

2

> If so, the claimant is not disabled.  If not, the inquiry proceeds to question two.

> 2.      Does the claimant have a severe impairment?  If not, the claimant is not disabled.  If so, the inquiry continues to question three.

> 3.      Does the severe impairment meet or equal one of the listings set forth in the regulation known as Appendix 1?  If so, the claimant is disabled.  If not, the inquiry continues to question four.

> 4.      Can the claimant still perform past relevant work?  If so, the claimant is not disabled.  If not, the inquiry proceeds to question five.

> 5.      Considering the claimant's age, education, work experience, and residual functional capacity, is there work that the claimant can do?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(I)-(v) (2009); *Newton*, 209 F.3d at 453.  At the first four steps, the claimant bears the burden of proof; at the final step, the Commissioner does.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

<u>Analysis</u>

At step one, the ALJ found that Naron had not engaged in substantial gainful activity since the date of his alleged disability.[1]  At step two, he found that Naron had three severe impairments: degenerative arthritis of the right knee, obesity, and dermatophytosis of the foot.[2]  The ALJ also found that Naron suffered

---

[1] Tr. at 25.

[2] *Id.*

3

from diabetes and hypertension but determined that neither of these impairments were severe.[3]   As for Naron's claim that he suffered from mixed personality disorder, the ALJ determined that diagnosis was not supported by the medical evidence.[4]

At step three, the ALJ found that none of Naron's three severe impairments met or equaled a listing.[5]   At step four, he concluded that Naron could not perform any of his past relevant work.[6]   Finally, at step five the ALJ found Naron could perform sedentary work.[7]   Accordingly, the ALJ denied his application for benefits.

Naron challenges the ALJ's decision on two grounds.   First, he argues that the ALJ improperly rejected his claim of mixed personality disorder.   Second, he claims that the ALJ erred in ruling that he could perform sedentary work despite his impairments.   The court treats each argument in turn.

1.     **Mixed Personality Disorder**

In December 2004, psychiatrist Dr. Jaime Ganc evaluated Naron and diagnosed him as having severe "[m]ixed personality disorder with schizoid and

---

[3] *Id.*

[4] *Id.* at 22.

[5] *Id.* at 25-26.

[6] *Id.* at 26.

[7] *Id.*

paranoid features."[8]  According to Dr. Ganc, Naron's disorder gave him poor or no ability in several work-related skills: using judgment, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability in a work environment.[9]

The ALJ rejected Dr. Ganc's diagnosis of mixed personality disorder for several reasons.  First, Dr. Ganc was not a treating physician.[10]  Second, Dr. Ganc saw Naron only one time and at the request of Naron's lawyer.[11]  Third, none of Naron's treating physicians ever suggested that he might have a mental impairment.[12]  Finally, the notes of Naron's treating physicians, which stated that Naron had an "intact" mood and was "alert, oriented, and well groomed," suggested that he did not in fact have mixed personality disorder.[13]

Naron points to two parts of the record that supposedly discredit the ALJ's rejection of Dr. Ganc's diagnosis.  First, he cites the hearing testimony of the Administration's vocational expert, who stated that Dr. Ganc's diagnosis of mixed

---

[8] *Id.* at 185.

[9] *Id.* at 187-88.

[10] *Id.* at 22.

[11] *Id.*

[12] *Id.*

[13] *Id.*

personality disorder would preclude Naron from performing "competitive work."[14]
Second, Naron cites his own hearing testimony, in which he described his erratic
work history (twenty-seven jobs in the past fifteen years) and the daily activities
that his disorder allegedly prevented him from performing.[15]

Neither of these pieces of evidence are sufficient to undermine the ALJ's
conclusion.  The vocational expert's testimony was based on the assumption that
Dr. Ganc's assessment was true.  Yet the ALJ gave several reasons, supported by the
evidence, why Dr. Ganc's assessment was not to be believed.  As for Naron's own
testimony, the ALJ noted that Naron's job history, which revealed that he could
hold down jobs for longer than a year, was more indicative of a "lack of motivation
to work" rather than a severe mental impairment, especially in light of the fact that
no physician other than Dr. Ganc had ever hinted that Naron suffered from a
psychiatric disorder.[16]  And as for Naron's testimony concerning his daily activities,
the ALJ determined that numerous pieces of evidence (which the court details in
the next section) tended to show that Naron exaggerated the degree to which he
was limited by his impairments.[17]

---

[14] *Id.* at 234.

[15] *Id.* at 270-71, 275-76, 281-86.

[16] *Id.* at 23-24.

[17] *Id.* at 24.

It is well settled that an ALJ may refuse to credit a physician's diagnosis if it is unsupported by the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ gave several cogent reasons why the record evidence did not support Dr. Ganc's diagnosis of mixed personality disorder. The court finds that these reasons were sufficient to convince a reasonable mind that Dr. Ganc's diagnosis was not to be credited. Accordingly, the ALJ's rejection of Dr. Ganc's diagnosis was supported by substantial evidence.[18]

2.    **Ability to Perform Sedentary Work**

The ALJ's decision that Naron could perform sedentary work is likewise supported by substantial evidence. For each physical impairment that Naron claimed, the ALJ explained why the record evidence showed that the impairment did not inhibit Naron's ability to perform sedentary work.[19]

***Degenerative arthritis of the right knee***. Naron had surgery on his right knee in 1991, 2002, and 2003. The medical evidence showed that, though he suffered from degenerative arthritis in that knee, it was not so severe that it

---

[18] Naron also complains that the ALJ should have ordered Naron to be examined by a mental health professional. An ALJ, however, is not required to order a consultive examination at government expense "'unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision.'" *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Because the evidence tended to show that Naron did not suffer from mixed personality disorder, the ALJ was not obligated to order such an examination.

[19] Tr. at 21-24.

prevented him from performing sedentary work.

For instance, in December 2002, after his second knee surgery, Naron's treating orthopedist, Dr. Joseph Muscat, reported that Naron walked with a "normal gait" and had "0% impairment."[20]  In January 2004, after his final knee surgery, Dr. Muscat commented that Naron walked with a "normal gait" and had "full range of motion and excellent strength."[21]  He observed that Naron's recovery was "about as good as he can get" and placed "[n]o work restrictions" on him.[22]  Though Naron did report "pain, soreness, and tenderness" in his right knee, these symptoms were "occasional."[23]  And as late as January 2005, Dr. Scott Rand, Naron's family physician, observed that Naron had no tenderness in his right knee.[24]

None of Naron's doctors ever opined that the arthritis in his right knee was so disabling that he could not perform even sedentary work.  On the contrary, the medical evidence indicated that Naron could work despite his three knee surgeries and reports of occasional pain.

---

[20] *Id.* at 108.

[21] *Id.* at 97.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 227.

*Tinea pedis lesions and dermatophytosis.*  Naron first sought treatment for his tinea pedis lesions in July 2004.[25]  After taking prescribed medication, Naron reported during a follow-up visit one month later that his feet were "a lot better."[26]  In March 2005, Naron was diagnosed with dermatophytosis of the foot and again prescribed medication.[27]  A follow-up visit two months later revealed that his condition was improving.[28]  Another follow-up visit in July 2005 indicated that his feet had further improved.[29]  Again, none of Naron's physicians reported that his foot problems were so severe that they precluded him from working.

*Diabetes and obesity.*  As with Naron's other impairments, none of Naron's doctors stated that his diabetes or obesity prevented him from working.  Rather, Naron's doctors prescribed diet and exercise (treatments that Naron admitted not following) to bring his blood sugar and weight under control.[30]

*Hypertension.*  Naron was diagnosed with and treated for benign essential

---

[25] *Id.* at 135.

[26] *Id.* at 134.

[27] *Id.* at 215.

[28] *Id.* at 213.

[29] *Id.* at 211.

[30] *Id.* at 195, 204, 207, 215, 227.

hypertension.[31]   Again, as with his other impairments, none of Naron's doctors

ever indicated that his benign hypertension limited his ability to work.

     ***Evidence that Naron could perform sedentary work.***  As the ALJ pointed out,

several pieces of evidence demonstrated that Naron could perform sedentary work:

- Naron wrote in his daily activity questionnaire that on an average day he walked for twenty minutes, swam for an hour, and did house work.[32]

- At the hearing, Naron testified that he generally watched TV for eight hours a day and spent about three hours a day on his computer.[33]

- Naron's job history demonstrated that he had the ability to work despite his impairments.[34]

- In a physical assessment report completed in October 2004, one Dr. Dolan wrote that, based on his review of the medical evidence, Naron could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk at least two hours in an eight hour workday, and sit about six hours in an eight hour workday.[35]

- Dr. Henry Hamilton, a medical expert who testified at the hearing, opined that, based on his own review of the medical evidence, Naron could perform sedentary work.[36]

In sum, the evidence before the ALJ was more than sufficient to cause a reasonable

---

[31] *Id.* at 195, 199, 204, 207, 211, 213, 216, 219.

[32] *Id.* at 88.

[33] *Id.* at 270, 271.

[34] *Id.* at 79.

[35] *Id.* at 152.

[36] *Id.* at 289.

mind to conclude that Naron could perform sedentary work despite his impairments. Consequently, the ALJ's decision rejecting Naron's application for benefits was supported by substantial evidence.[37]

<u>Conclusion</u>

The ALJ's decision was based on the correct legal standards and supported by substantial evidence. Accordingly, Naron's motion for summary judgment is denied and the ALJ's decision affirmed. The court will issue a separate final judgment.

Signed at Houston, Texas on June 17, 2009.

Stephen Wm Smith
United States Magistrate Judge

---

[37] Naron also argues that the ALJ's decision was not supported by substantial evidence because he was granted disability benefits in a second application one day after the ALJ's decision. But this court may review the ALJ's decision only on the record before the ALJ. *See Johnson v. Heckler*, 767 F.2d 180, 182-83 (5th Cir. 1985). The fact that Naron was awarded benefits in separate application—based on a separate record—has no relevance.

If Naron presented new medical evidence that he was disabled and showed good cause why he could not have presented the new evidence before the ALJ, then the court could remand for another hearing. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). However, Naron has presented no new medical evidence.